## CARROLL v. GILLESPIE & BRO.

LIEN: *Of justices' judgment confined to the township.*

The lien of a justice's judgment and stay bond is confined to the defendant's personal property in the township in which the judgment was rendered. •

APPEAL from *Jefferson* circuit court.

Hon. X. J. PINDALL, Circuit Judge.

*N. T. White* for appellant.

*Section 3,782, Gantt's Digest,* provides that: "In all cases where executions shall be stayed on any judgment rendered by a justice of the peace, such judgment shall be a lien on *all* the personal property subject to execution belonging to the defendant at the time of the rendition of the judgment." Defendant's property in one township is as much subject to execution as in another. *Sec. 3,794 Gantt's Dig.*

The proper rule for the construction of a statute is: If possible to give effect to all its parts, and that every word shall be presumed to have been intended to have the same force and effect, *Wilson v. Biscoe, 11 Ark., 44*; and that every clause, sentence or part shall stand if possible. *Kelly v. McGuire, 15 Ark., 545.* A *verbis legis non est ucedendum. Brooms Max., 268.*

The lien of this stayed judgment extended to all personal property in the county subject to execution. *Cites Epps v. State, 28 Ark., 35; Gantt's Dig., secs. 2,622, 3,791, 3,798, 3,778, etc.*

EAKIN, J. Gillespie & Bros. brought replevin against Carroll, a constable, to recover certain personal property which he had taken in execution in favor of Conrad & Co., against W. N. Portis and James M. Portis, his security, on a stay bond executed before a justice of the peace. This

Carroll v. Gillespie & Bro.

suit was begun before a justice of the peace and appealed to the circuit court, where the case was submitted to the judge on the following facts :

On the tenth of August, 1878, Conrad & Co. recovered a judgment against W. N. Portis before a justice of the peace for Vaugine Township, Jefferson county. Defendant entered into a bond with James M. Portis as surety, by which execution was stayed until the first day of January, 1879. On the second day of May, 1879, the Portises filed for record a mortgage to Gillespie & Bros. of the personal property now in suit, which was owned by W. N. Portis at the time the judgment in favor of Conrad & Co. was rendered, and also when the stay bond was executed, and which had been kept by him on his farm up to the time of the beginning of this suit by Gillespie & Bros. This farm is in Dudley Lake Township in the same county.

On the twentieth of October 1879, execution issued on the stay bond in favor of Conrad & Co. against W. N. and J. M. Portis, which was placed in Carroll's hands, and by him levied on the property. There had been a former execution on the stay bond on the twenty-sixth of May, 1879, which had been returned *nulla bona*. The property was then replevied in this suit by the appellees Gillespie & Bros. It did not appear that the property had ever been in Vaugine Township from the date of the judgment against Portis to the execution of the Gillespie mortgage.

The court declared the law to be that liens of the stay bond and judgment did not attach to property outside of the township where it was executed, and gave judgment for Gillespie & Bros. This is the single point now made on appeal.

This court held in *Isbell v. Epps, 28 Ark., 35*, that an *execution* from a justice of the peace was a lien from the time of its delivery to the constable upon the goods of the defendant within the limits of the township to which it was

LIEN:

Of Justices' judgment.

Carroll v. Gillespie & Bro.

directed. In this case no execution had ever been issued upon the stay bond nor original judgment, when the mortgage was executed. The direct question is was a stay bond executed in August, 1878, and forfeited on the first day of January, 1879, a lien upon the second of May, 1879, upon property of the defendant outside the township in which the stay bond was made, but in the same county?

After the decision in *Isbell v. Epps*, a general act, regulating the practice before justices of the peace, was passed on the twentieth of April, 1873. It is declared to be " the sole and *only* law governing the mode of proceedings in justices' courts in civil actions. " *Sec. 125*. It provides that executions issued by a justice of the peace shall be directed to any constable of the county, but he can only levy it upon goods and chattels out of the township where the judgment was rendered under certain conditions. That is when the defendant resides out of the township, the execution may be levied on goods and chattels in the township where he resides, or if he has no goods and chattels in the township of the judgment, it may be levied in any township in which goods may be found. *Gantt's Dig., secs. 3,791 et seq.*

After providing for stay bonds, the act reads as follows (*Sec. 3,782 of Gantt's Digest*): "In all cases where executions shall be stayed on any judgment rendered by a justice of the peace, such judgment shall be a lien upon all the personal property subject to execution belonging to the defendant at the time of the rendition of the judgment."

The property in question was certainly subject to execution on the Conrad judgment if it had not been stayed, and, literally construed, the statute made the stay bond a lien. The court, however, has found grave embarrassment in following the letter of the statute to all its logical conclusions, and have felt the necessity of seeking the intention of the legislature in the general scope and purpose of the act, in

connection with the former law concerning executions as settled by the court in the case of *Isbell v. Epps*. It was not probably the intention of the legislature, in using the terms "all the personal property subject to execution," to make the stay bond a more extensive or far-reaching lien than the execution would have been in the sheriff's hands, if never stayed. It was the policy of the new act to make only the property in the township of the judgment subject to execution, in the first instance, in ordinary cases. The cases where a constable might levy in another township of the county were exceptional.

In one sense not only all the property in the county, but in the State, was subject to execution. It might be reached by filing a transcript in the circuit court, and this, too, would be within the letter of the statute.

It would be very dangerous to deal in personal property, if it might be subject to such obscure liens as justices' judgments in distant parts of the county. No one could, in ordinary cases, examine all the dockets of the different justices of a county before purchasing a horse or a cow. Any one might, with no great inconvenience, make enquiries of the justices of a township in which the property may be situated. We cannot suppose the legislature intended the expression in a sense which would lead to absurd results, and therefore conclude it meant all personal property subject to execution in the township in which the judgment was rendered and stay bond executed. Affirm.